**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JEFFREY A. WOLGAST, et ux,

    Plaintiff,

v.

TAWAS POLICE AUTHORITY,
POLICE CHIEF DENNIS FRANK,
SERGEANT STEVEN PARENT, and
CORPORAL JOHN RICHARDS,
formerly of the TAWAS POLICE
AUTHORITY,

    Defendants.

_____/

CASE NO. 05-CV-10278

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANTS TAWAS POLICE AUTHORITY,**
**POLICE CHIEF DENNIS FRANK, SERGEANT STEVE PARENT**
**AND CORPORAL JOHN RICHARDS' MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 56(c)**[1]
(Dkt. 15)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART** as follows:

    1)    As to Defendants Tawas Police Authority and Police Chief Frank, the motion to dismiss or for summary judgment be GRANTED in its entirety;

---

[1] Defendants label their motion as one for summary judgment but refer to FED. R. CIV. P. 12(b)(6)(motion to dismiss) as well as FED. R. CIV. P. 56(c)(motion for summary judgment). Therefore, I presume their motion is stated in the alternative.

2)      As to Defendants Sergeant Steven Parent and Corporal John Richards, the motion to dismiss or for summary judgment be GRANTED as to Conspiracy (Count V) and Intentional Infliction of Emotional Distress (Count VI), but that their motion to dismiss or for summary judgment as to the remaining counts, First Amendment Retaliation (Count I)(with respect to Plaintiff's calls to central dispatch complaining of the noise at Crossroads only), Unlawful Arrest (Count II), False Imprisonment (Count III), and Malicious Prosecution (Count IV) be DENIED, and that the case proceed to discovery on these claims.[2]

## II.    REPORT

### A.    Introduction and Facts

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on November 14, 2005.  (Dkt. 4.)  Pending is the above-entitled motion. (Dkt. 15.) Plaintiff has filed a response opposing the motion (Dkt. 21), and Defendants filed a reply to Plaintiff's response.  (Dkt. 23.)  Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

On May 29, 2004, at 10:26 p.m., central dispatch for the Tawas Police Authority ("TPA") received a telephone call from a male who stated that the Crossroads Bar & Grill ("Crossroads") was going to "blow tonight," and then the man hung up the phone. (Defs.' Mot., Dkt. 15, Ex. 1 at ¶¶ 2, 9; Ex.2 at 11.)  The call was made from a pay phone near Freels Market.  (*Id*.)  The call

---

[2]Plaintiff has also filed a motion requesting that the Iosco County Prosecutor's Office be found in contempt. (Dkt. 14.) After considering the grounds alleged in the motion, and after a thorough review of all the materials submitted by the parties, I am unable to discern the existence of any conduct on the part of this party sufficient to support a finding of contempt.  I therefore suggest that this motion be denied.

2

was interpreted as a bomb threat. (*Id.*) Defendant Corporal John Richards ("Corporal Richards") contacted Officer Mark Ferguson ("Officer Ferguson")[3] and they proceeded to the area where the pay phone was located and found no one there, nor were there any witnesses who observed anyone use the pay phone. (*Id.*)

Since the Officers were aware that Plaintiff had made calls to the TPA central dispatch complaining about noise from Crossroads in the past, they suspected Plaintiff may have made the bomb threat call as well. (*Id.*) The Officers questioned Plaintiff, his wife, and his son, all of whom denied making the call. The Officers indicated to Plaintiff and his family that they would be sending tapes of the Plaintiff's previous calls to the TPA central dispatch, along with the tape of the bomb threat call, to the state police for analysis and that if Plaintiff's voice proved to be the one making the bomb threat call, then Plaintiff would be charged. (Tr. in Supp. of Ex. A, Dkt. 22 at 19-20, 23-24.) Although considered a potential suspect initially, it was confirmed that Plaintiff's son was home all night, so he was eliminated as a suspect. (Compl. ¶ 23.)

On August 4, 2004, a warrant was issued for Plaintiff's arrest. The affidavit indicates that Captain Richards "was advised that the caller of the bomb threat sounded as the same as Wolgast" and that Captain "Richards believes the caller to be the same on all the calls." (Defs.' Mot., Dkt. 15, Ex. 2 at 11.) The Officer's summary indicates that after the Officers did not locate anyone at the payphone, Captain Richards called the TPA central dispatch and asked them to "pull up prior calls made by the Wolgast's [sic] and see if they sounded the same." (*Id.* at 19.) The report goes on to say that "Cpl. Richards was then advised, by Dispatcher Golimbiewski, that Dispatcher Soroka stated that it did sound like one of the Wolgast's [sic]." (*Id.*) The report also notes that "Dispatcher's [sic] Golimbiewski and Soroka are the midnight crew at Central Dispatch and has

---

[3]Collectively, they will be referred to as the Officers.

3

[sic] talked to the Wolgast's [sic] on numerous occasions when they have called in regarding loud Music at Cross Roads." (*Id.*) Plaintiff alleges that although the affidavit ("affidavit")[4] indicates that at the time the bomb threat call was made, Plaintiff was on a bicycle ride which took him past Freels Market (*Id.*), Plaintiff contends that he told the Officers he was on a bicycle ride but specifically told them the route he had taken which did not take him past Freels Market. (Compl. ¶ 17.)

Plaintiff was arrested on August 16, 2004, for violation of MCL 750.411a, false report or threat of bomb, a felony carrying a maximum punishment of four years in prison and a $2,000 fine. (Defs.' Mot., Ex. 2.) This charge was dismissed on September 28, 2004, the day the preliminary examination was scheduled because, according to the complaint, the dispatchers could not identify Plaintiff's voice. (Compl. ¶ 59.) Apparently, the tapes were never sent to the proper state police laboratory for voice identification or analysis. The tapes, along with other documents, have been destroyed and are no longer available. *See* Plaintiff's Motion Requesting that Iosco County Prosecutor's Office be Found in Contempt of Court. (Dkt. 14.) Plaintiff also states that he had paid $2,618.20 in attorney fees in the month prior to the preliminary examination. (Compl. ¶ 58.)

Documents filed with Plaintiff's response to the instant motion[5] indicate that Dispatcher Soroka told Plaintiff that she told "whoever asked [her]," "whether it was a police officer or somebody in [the office]," that "[she] had talked to [Plaintiff] in the past and the person that called that bomb threat in did not sound like [Plaintiff] at all." (Tr. in Supp. of Ex. A, Dkt. 22 at 42.) Soroka indicated that she "was subpoenaed, which was strange, [she] thought, because . . . what good was [she] gonna do them, really, truly? . . . because [she] had talked to [Plaintiff] in the past

---

[4] The affidavit was sworn by Sergeant Steven Parent.

[5] Plaintiff titled this document "Transcript."

4

and [she] said that it just did not sound like Jeff Wolgast and [she] had talked to [Plaintiff] in the past." (*Id*. at 43.) Dispatcher Golimbiewski told Plaintiff that she "told Officer Richards that [she] thought the caller was too young and that [Plaintiff] was always cordial, and uh, didn't swear or raise his voice [Plaintiff] would just call in and make a complaint and that was it, you know, and that was [her] opinion, [she] thought the caller was too young." (*Id*. at 41.)

Plaintiff filed the instant complaint *pro se* on October 28, 2005. The 19-page typewritten complaint raises six counts. Four of them, First Amendment Retaliation (Count I), False Arrest (Count II), False Imprisonment (Count III), and Conspiracy (Count V), arise under the federal civil rights provisions of 42 U.S.C. § 1983 *et seq*. The remaining counts, Malicious Prosecution (Count IV), Intentional Infliction of Emotional Distress (Count VI), arise under state law. The instant motion followed February 14, 2006. (Dkt. 15.) Subsequently, a motion to stay discovery was granted. (Dkt. 20.)

**B.     Analysis and Conclusions**

    **1.     Governing Motion Standards**

Defendants seek dismissal under Rule 12, or in the alternative summary judgment under Rule 56. Rule 12(b) of the Federal Rules of Civil Procedure provides that when "matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b) (emphasis added). In their treatise, Wright and Miller explain that, pursuant to the portion of the rule italicized above,

> [t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. This discretion generally will be exercised on the basis of a determination

5

>of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (footnote omitted).

Plaintiff has filed a series of exhibits with his response. These documents appear to have relevance to Plaintiff's arguments and I conclude are worthy of review and consideration. I therefore conclude that matters outside the pleadings presented by the Plaintiff should be accepted and the motion converted to one under Rule 56, as the acceptance and review of these documents will materially facilitate the disposition of the instant motion. Moreover, it is clear that Plaintiff relies upon these documents, thus presuming that the Court will accept and review them. I cannot discern that any party will be prejudiced. I will therefore consider Defendants' motion under the standards for the determination of a Rule 56 motion for summary judgment.

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving

party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### 2. Qualified Immunity for Federal Claims

Defendants assert in their motion that they are entitled to qualified immunity for their actions which led to the arrest and prosecution of the Plaintiff. The U.S. Supreme Court has

7

explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to:

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.

*Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). The clearly established right must be particularized such that a "reasonable official in the defendant's position knows that her actions violate that right." *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 505 (6th Cir. 2005). In addition, in the context of a dispositive motion, the next determination is "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(en banc).[6] The court views the facts in the light most favorable to the Plaintiff but must only consider the facts known to the officers at the time the affidavit was executed. *Hale v. Kart*, 396 F.3d 721, 725, 728 (6th Cir. 2005). The

---

[6] Other circuits, such as the First Circuit, employ a similar three-step test: "'(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.'" *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005), quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004).

court may dismiss the complaint "only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005). Therefore, the qualified immunity determination begins by identifying the substantive right that has been allegedly violated. *Id.*

### a.     Whether a Constitutional Violation has Occurred

The Fourth Amendment of the U.S. Constitution requires that an arrest be supported by probable cause. U.S. CONST. Amend IV; *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). "[P]robable cause means something 'less than evidence that would justify . . . conviction,' but 'more than bare suspicion.'" *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996)(quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). When a court is called upon to make a determination as to whether an arrest was supported by probable cause, the arresting officer's subjective knowledge of the facts are the only facts to be considered, even if it is now known that some of the officer's beliefs were in fact mistaken. *Klein*, 275 F.3d at 549-50. The Supreme Court has held that an officer is permitted to make a warrantless arrest, even for a misdemeanor, so long as he has probable cause to believe that an offense has been committed. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).

"[I]ssuance of a warrant is not an automatic shield from liability but is 'only one factor [used] in applying the test of "reasonable professional judgment" to the officer's conduct.'"

*Armstrong v. City of Melvindale*, 432 F.3d 695, 701 (6th Cir. 2006), quoting *Greene,* 80 F.3d at 1107.[7]  In *Armstrong*, the officers "expressed their uncertainty about the law to a prosecutor and received assurances in response before applying for the warrant." *Id.* at 702.  The Court found that they had acted reasonably in seeking and relying on the prosecutor's advice and thus, were entitled to qualified immunity for their seeking and executing a search warrant.  *Id.*

In the instant case, there is no indication that any legal question existed that would or did prompt either Sergeant Parent or Officer Richards to seek guidance from the prosecutor.  There did not appear to be any legal issues; rather, I suggest, any flaw in the affidavit is due to false or erroneous factual information.   An officer cannot rely on the judicial determination of probable cause if he knowingly makes false statements or omissions in his affidavit that are necessary to the finding of probable cause.  *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).  "Reckless disregard for the truth in the submission of a warrant application may be established where an officer 'in fact entertained serious doubts as to the truth of the allegations' or where 'circumstances evinc[ed] obvious reasons to doubt the veracity of the allegations' in the application." *Burke*, 405 F.3d at 81, quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002).

In determining whether an officer's reliance is reasonable, courts are to determine whether: 1) the warrant appears to be valid on its face, and if so, 2) reliance is undermined by an intent to include false or misleading evidence and if probable cause exists without the false or misleading evidence.  *Hale,* 396 F.3d at 725-26.

---

[7]Stated differently, "[s]tate officers . . . are entitled to rely on a judicially secured warrant unless the warrant was so lacking in indicia of probable cause that existence of probable cause was unreasonable." *BPNC, Inc. v. Taft*, 147 Fed. Appx. 525, 530 (6th Cir. 2005)(finding no constitutional violation where Plaintiff failed to identify any statements in the affidavit that were false and failed to identify which officers stated a deliberate falsehood or showed a reckless disregard for the truth).

### i. Whether the Warrant Appeared Facially Valid

I suggest the warrant in the instant case appeared facially valid. If presumed accurate, the allegations in the affidavit could, arguably, support a finding of probable cause. The affidavit states that Captain Richards "was advised that the caller of the bomb threat sounded as the same as Wolgast" and that Captain "Richards believes the caller to be the same on all the calls." (Defs.' Mot., Dkt. 15, Ex. 2 at 11.) In addition, the affidavit states that Plaintiff "had ridden his bicycle by Freels Market" near the time the threatening call was made. (*Id.*) Although less than compelling, the affidavit and warrant set forth sufficient facts which, if true, could appear to support a facially valid warrant.

### ii. False or Misleading Evidence.

Plaintiff must make a "strong preliminary showing" that the affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in his inclusion of false facts or omission of critical information from the affidavit in support of a search warrant. *Hale*, 396 F.3d at 736, *citing Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998), and *United States v. Atkin*, 107 F.3d 1213 (6th Cir. 1997).

In *Hale, supra*, the court found that Plaintiff failed to provide any evidence of the affiant's intent to mislead, and the Plaintiff had not even argued that the omissions were critical to the finding of probable cause. However, the court admonished that it did "not foreclose the possibility that strongly material omissions could provide evidence of an intention to mislead." *Hale*, 396 F.3d at 727.

In the instant case, I suggest that Plaintiff has produced evidence that could support a finding that Officers Parent and Richards were reckless or deliberately false. *United States v.*

11

*Hammond*, 351 F.3d 765, 774 (6th Cir. 2003)("There is no question that Officer Engle acted with reckless disregard for the truth in view of the remarkable inaccuracies presented in his affidavit.").[8] Although the affidavit indicates that at the time the bomb threat call was made Plaintiff was on a bicycle ride which took him past Freels Market, Plaintiff contends that he told the Officers he was on a bicycle ride but specifically told them the route he had taken which did not take him past Freels Market. (Compl. ¶ 17.) While the affidavit states that Captain Richards "was advised that the caller of the bomb threat sounded as the same as Wolgast" and that Captain "Richards believes the caller to be the same on all the calls" (Defs.' Mot., Ex. 2 at 11), dispatcher Golimbiewski told Plaintiff and "whoever asked" that the caller did not sound like Plaintiff at all (Dkt. 22 at 42), and dispatcher Soroka specifically told Officer Richards that, in her opinion, the caller was too young to be Plaintiff and spoke in a different manner than Plaintiff. (*Id*. at 41.) Consequently, dispatcher Golimbiewski was perplexed as to why she had been subpoenaed to testify because she could offer no evidence to aid in the prosecution of Plaintiff. (*Id*. at 43.) These inconsistencies are, I suggest, sufficient to raise a genuine question of disputed material fact on the question of recklessness for the truth. *Hammond, supra*. At this stage of the proceedings, it appears that Defendants Parent and Richards were aware of this information at the time the warrant was sought, so the presentation of such inaccurate information appears to be without justification other than a reckless disregard for the truth.

---

[8]In *Hammond, supra*, the inaccuracies were as follows: Officer Engle ("affiant") stated that another officer had informed him that marijuana was located in a side room but the other officer did not recall making such a statement; the affiant stated he had verified the complaint or tip but in fact was not able to verify anything more than that the defendant's home address was correct; the affiant implied he had driven by the property closer in time to the alleged date of the tip than he had; although the affiant stated there was no trailer on the property, there was; although the affiant stated there were no windows in the building, there were. The Sixth Circuit held that "the number of falsehoods and half-truths told are substantial and reflect, at the very least, a reckless disregard for the truth." *Id.*

12

### iii. Whether Probable Cause Exists with any False or Misleading Evidence Excised

Removing the inaccurate information, I suggest that the affidavit cannot support probable cause. Without the voice identification and the bicycle ride route, I am unable to discern the existence of evidence connecting Plaintiff to the threatening call. Thus, I suggest that probable cause is lacking once the inaccurate information is removed.

### b. Whether the Constitutional Right was Clearly Established

The caselaw cited above, I suggest, leaves no doubt that the probable cause requirement of the Fourth Amendment is a clearly established constitutional right, and the importance of accurate information being sworn in the affidavit in support of probable cause to arrest is also intuitive and clearly established.

### c. Conclusion

Because I conclude that although facially valid, a genuine issue of disputed material fact exists as to whether Defendants Parent and Richards knowingly included false information in the affidavit supporting Plaintiff's arrest, and because excising that information renders the affidavit without probable cause, I suggest that Plaintiff has sufficiently alleged a violation of a federally protected and clearly established constitutional right, and that Defendants' motion should on this ground be denied.

### 3. Plaintiff's Civil Rights Claims under 42 U.S.C. § 1983

Plaintiff alleges violations of 42 U.S.C. § 1983, specifically: 1) First Amendment retaliation, 2) false arrest, 3) false imprisonment, and 4) conspiracy. In an action brought pursuant to 42 U.S.C. § 1983, the plaintiff must prove that (1) the challenged conduct was committed by a person acting under the color of state law, and (2) the conduct caused a deprivation of the plaintiff's rights or privileges protected by the laws or Constitution of the United States. *Parratt*

13

*v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).  Lack of probable cause must be pleaded and proven in a retaliatory prosecution case, *Hartman v. Moore*, ____ U.S. ____ , 126 S. Ct. 1695, ____ L. Ed. 2d ____ (2006), and is also essential to the other claims.

### a. First Amendment Retaliation (Count I)

Plaintiff contends that he was retaliated against for exercising his First Amendment rights when he 1) complained about the noise at Crossroads, and 2) appealed Chief Frank's Freedom of Information Act ("FOIA") denial.  Defendants counter that they only investigated Plaintiff after the dispatchers informed them the bomb threat call sounded like one of the Wolgasts and that the FOIA request was not made until three weeks after the investigation had begun, so it could not have formed the basis of any retaliation taken by the investigating officers.  In their supplemental brief, Defendants argue that under *Hartman, supra*, Plaintiff cannot prove that the Defendants acted without probable cause.

To establish a retaliation claim, Plaintiff must plead facts that establish that: 1) he was engaged in a constitutionally protected activity, 2) defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary fitness from continuing to engage in that activity, and 3) the adverse action was motivated at least in part as a response to the exercise of his constitutional rights.  *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  In addition, Plaintiff must plead facts establishing that the officers acted without probable cause. *Hartman, supra*.

Plaintiff must show that exercise of his First Amendment right was a substantial or motivating factor in the Defendants' alleged retaliatory conduct.  *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).  Where the alleged

14

retaliatory conduct began before the Plaintiff engaged in protected speech, no retaliatory claim can be established. *Id.*

Since Plaintiff's FOIA request was made after the officers were investigating Plaintiff, the investigation could not have been motivated by Plaintiff's FOIA request. (Pl.'s Resp., Dkt. 21, Ex. E.) Consequently, the FOIA request or denial cannot serve as a basis for any retaliation claim. Plaintiff also avers that he was retaliated against for having engaged in protected speech while making complaints about noise from Crossroads. This speech did occur before Plaintiff was investigated. In addition, it was acknowledged by the officers that the reason Plaintiff was suspected of making the threatening call is that he had made complaining calls about Crossroads in the past. (Defs.' Mot., Ex. 2.) Therefore, Plaintiff has plead facts that a jury could interpret as satisfying the elements of a retaliation claim. *Bloch, supra*. The only remaining question is whether Plaintiff has sufficiently plead facts showing that the Officers acted without probable cause. *Hartman, supra*. This question will be considered immediately below in the context of Plaintiff's claims of Unlawful Arrest and False Imprisonment.

      **b.**      **Unlawful Arrest (Count II) and False Imprisonment (Count III)**

Plaintiff argues that his arrest was based on a falsified police report and affidavit in support of the arrest warrant and was, therefore, unlawful. Defendants counter that since probable cause to arrest Plaintiff existed, no false arrest or false imprisonment claim can be established. Defendants argue further that even if the affidavit contained false information, the warrant is still valid where the remainder of the warrant supports probable cause, citing *Franks*, 438 U.S. at 171-72.

As noted above, the Fourth Amendment of the U.S. Constitution requires that an arrest be supported by probable cause. U.S. CONST. Amend IV; *Klein v. Long*, 275 F.3d 544, 550 (6th Cir.

2001). For the reasons indicated under the qualified immunity analysis, however, I suggest that Plaintiff has proffered sufficient evidence to survive summary judgment on the issue of whether the warrant lacked probable cause.

      **c.**      **Conspiracy (Count V)**

After incorporating his factual allegations, Plaintiff avers in this Count that the "acts of Defendants and each of them, insofar as they were undertaken, pursuant to agreement, scheme, policy, conspiracy, or concert of action in the wrongful acts complained of constitute conspiracy to violate civil rights under 42 U.S.C. 1983." (Compl. ¶ 73.) Defendant responds that no conspiracy claim is cognizable under § 1983 and that even if his claim is construed as a § 1985(3) claim, Plaintiff has failed to establish any deprivation of a federal constitutional right that would provide him with a right of recovery under §1985.

"It is well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Guiterrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). The allegation quoted above is, I suggest entirely conclusory. Plaintiff's factual allegations also fail to support the elements of a civil right conspiracy. I therefore suggest that he has failed to state a claim for conspiracy and that this claim may be dismissed as a matter of law.

      **4.**      **Federal Claims Against Defendants TPA and the Police Chief**

Also contained within Plaintiff's complaint are allegations against the Tawas Police Authority and its chief, none of whom participated in the wrongful conduct alleged in his complaint. As a result, Plaintiff's claims against the police chief must be based on *respondeat superior* or some type of failure to train or supervise theory since the police chief played no particularized role in investigating Plaintiff. Under § 1983, however, the Plaintiff must show that

the supervisory official "condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Since Plaintiff has failed to allege that the TPA or police chief have condoned, encouraged or knowingly acquiesced in the alleged constitutional violation, I suggest that he has failed to state a claim upon which relief can be granted against the Defendants TPA and Police Chief Dennis Frank and that the federal claims against these Defendants should be dismissed.

### 5.  State Law Claims[9]

#### a.  Malicious Prosecution (Count IV)

Plaintiff contends that Defendants "maliciously and with ulterior motives caused Wolgast to be arrested and criminally prosecuted against . . . [and that] Defendants fabricated evidence, ignored exculpatory evidence, and conducted the investigation in such a way as to make sure that no evidence was found which would show Wolgast's innocence." (Compl. ¶ 71.) Plaintiff relies on MICH. COMP. LAWS § 690.2907.[10] Defendants did not specifically address this count, however, the Court notes that Michigan law qualified immunity principles can be a defense to this count.

"The elements of a cause of action for malicious prosecution are: "1) a criminal prosecution instituted against plaintiff by defendant, terminating in plaintiff's favor, 2) absence of probable cause, and 3) malice or a primary purpose in bringing the action other than bringing the offender

---

[9] Jurisdiction of these claims arises under 28 U.S.C. § 1367.

[10] Plaintiff correctly relies on state law because there is no cause of action for malicious prosecution under federal law. *BPNC, Inc. v. Taft*, 147 Fed. Appx. 525, 531 (6th Cir. 2005)( "Because a plurality of the Supreme Court has rejected a substantive-due-process right to be free from malicious prosecution, and because Plaintiff[] do[es] not allege any facts suggesting that [the State] fails to provide an adequate post-deprivation remedy for cases of malicious prosecution, Plaintiff[] cannot succeed on this claim [under 42 U.S.C. §1983].").

to justice." *Rivers v. Ex-Cell-O Corp.*, 100 Mich. App. 824, 832, 300 N.W.2d 420 (1980).[11]

Malice can be inferred from a lack of probable cause. *Id.* at 835.

Qualified immunity of governmental employees under Michigan law is statutorily provided for as follows:

> Each ... employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the ... employee ... while in the course of employment ... while acting on behalf of a governmental agency if all of the following are met:
> (a) The ... employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The ... employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subsection, 'gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

MICH. COMP. LAWS § 691.1407(2). Under Michigan law, "the" proximate cause is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307, 317 (2000).

Michigan law also provides that governmental entities, such as municipalities or police authorities, cannot be held liable for the intentional torts of its employees because they are entitled to absolute immunity. *Payton v. City of Detroit*, 211 Mich. App. 375, 393, 536 N.W.2d 233 (1995). Further, police chiefs are absolutely immune from tort liability for the acts of their employees. *Id.* Therefore, I first suggest that no action can be sustained against Defendants TPA or Police Chief Dennis Frank.

As to the individual police officers, "'the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a

---

[11]For malicious prosecutions involving civil proceedings, special injury must also be proven. *Friedman v. Dozorc*, 412 Mich. 1, 48, 312 N.W.2d 585 (1981).

18

complaint, without which there is no probable cause.'" *King v. Arbic*, 159 Mich. App. 452, 466, 406 N.W.2d 852 (1987), quoting *Belt v. Ritter*, 18 Mich. App. 495, 503, 171 N.W.2d 581 (1969). "Failure to include all exculpatory facts is not adequate to sustain a suit for malicious prosecution." *Payton*, 211 Mich. App. at 242. As indicated under the federal qualified immunity discussion, I suggest that the affidavit in support of the warrant lacked probable cause once the false and misleading information was redacted. I further suggest that for the reasons set forth earlier, Plaintiff has plead sufficient facts to avoid a motion for summary judgment as to this claim.

### b. Intentional Infliction of Emotional Distress (Count VI)

"Under Michigan law, the elements of a claim of intentional infliction of emotional distress are: 1) extreme or outrageous conduct, 2) intent or recklessness, 3) causation, and 4) severe emotional distress." *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 442 (6th Cir. 2005). Plaintiff has failed to even allege any severe emotional distress, nor does the complaint set forth any conduct by any Defendant which Michigan law considers extreme or outrageous; thus, the complaint fails as a matter of law. Accordingly, I suggest that Defendants' motion to dismiss should be granted as to this claim.

### 6. Summary

For the reasons stated above, I recommend that Defendants Tawas Police Authority and Police Chief Frank's motions to dismiss or for summary judgment be granted in their entirety; that Defendants Sergeant Steven Parent's and Corporal John Richards' motions to dismiss or for summary judgment be granted as to Conspiracy (Count V) and Intentional Infliction of Emotional Distress (Count VI), but that their motions to dismiss or for summary judgment as to the remaining counts be DENIED and that this case proceed to discovery on the claims not disposed of by this Report and Recommendation.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                             s/ *Charles E. Binder*
                                                           CHARLES E. BINDER
Dated: June 29, 2006                                            United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on G. Gus Morris, and served in the traditional manner on Jeffrey A. Wolgast and Honorable David M. Lawson.

Dated:  June 29, 2006                                        By       s/Mary E. Dobbick
                                                                       Secretary to Magistrate Judge Binder