UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY A. WOLGAST,

          Plaintiff,          Civil No. 05-10278-BC
v.                                          Hon. David M. Lawson
                                                  Magistrate Judge Charles E. Binder

TAWAS POLICE AUTHORITY, POLICE
CHIEF DENNIS FRANK, SERGEANT
STEVEN PARENT and CORPORAL
JOHN RICHARDS,

          Defendants.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
OVERRULING PLAINTIFF'S AND DEFENDANTS' OBJECTIONS,
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND REFERRING MATTER FOR
FURTHER CASE MANAGEMENT**

The plaintiff filed this matter alleging that the defendants violated his constitutional rights when they arrested him for making a phony bomb threat but had no probable cause to do so. He asserted claims under 42 U.S.C. § 1983 and state law. The case was referred to Magistrate Judge Charles E. Binder for general case management, and the defendants filed a motion for summary judgment. The defendants also filed a motion to stay discovery, which the magistrate judge granted. Magistrate Judge Binder filed a report recommending that the motion be granted in part and denied in part, and both sides filed timely objections. The Court has reviewed the matter *de novo* and now finds that the plaintiff has not stated actionable claims against the Tawas Police Authority or Police Chief Dennis Frank; he has failed to state claims for relief against defendants Steven Parent and John Richards for conspiracy and intentional infliction of emotional distress; and the plaintiff has submitted sufficient information to convince the Court that, given an opportunity for discovery, he could bring forth facts to support his claims against defendants Parent and Richards for violating his

constitutional rights under the First and Fourth Amendments and for false imprisonment and malicious prosecution under state law. The Court, therefore, will grant the defendants' motion in part and deny it in part.

I.

The plaintiff filed this action against the Tawas City, Michigan police department, its police chief, and two of its police officers alleging in several counts that these defendants retaliated against him for making complaints about the noise emanating from a local bar. The retaliation took the form of an illegal arrest, the plaintiff contends, when he was wrongfully accused of making a bomb threat against that same establishment. The complaint filed in this Court by the plaintiff *pro se* alleges violations of the First and Fourth Amendments via 42 U.S.C. § 1983 (counts I and II); false imprisonment (Count III); malicious prosecution (Count IV); conspiracy (Count V); and intentional infliction of emotional distress (Count VI). In reporting on the defendants' dismissal and summary judgment motion, the magistrate judge recommended that the case be dismissed in its entirety against the police chief and the police department and proceed against the two officers on all claims except the conspiracy and intentional infliction of emotional distress counts.

The defendants' motion is based alternatively on Rules 12(b)(6) and 56(c). The magistrate judge considered matters outside the pleadings, and therefore he applied the standards governing Rule 56 motions. However, at this stage of the litigation, it plainly appears that the defendants are attempting to sort out the claims that have no merit on their face from those that might require some factual development to adjudicate, and the magistrate judge properly treated the matter accordingly. The plaintiff has responded to the motion with information in the form of unverified transcripts of recorded conversations, accounts of statements from other individuals in the Tawas City police

department, and other items that are not at this point in the proceedings of evidentiary quality. One of the defendants' main objections is that these offerings are not sufficient to satisfy the plaintiff's burden on summary judgment. It is well settled that the party opposing the motion must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). That party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

That objection is not well taken in this case. Sixth Circuit precedent makes clear that a *pro se* litigant's submissions are to be construed liberally, *Middleton v. McGinnis*, 860 F. Supp. 391, 392 (E.D. Mich.1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); that is, *pro se* pleadings are held to a "less stringent standard[]" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This rule has been applied with more vigor when the *pro se* litigant it a prisoner. *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003) (joining the majority of circuits in holding that "a pro se litigant is entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule. . . . However, this court clearly has held that no such rule providing 'special assistance' exists with respect to nonprisoner pro se litigants") (internal citations omitted). Nonetheless, outside of the prisoner litigation context, the Sixth Circuit has found that summary judgment motions, as a matter of discretion, may be found premature where discovery has not commenced. *See McKinley v. City of Mansfield*, 404 F.3d 418, 443 (6th Cir. 2005) (holding that summary judgment was premature and "the district court abused its discretion because at the time of its highly restrictive discovery order, *no* discovery had occurred and the court offered no explanation for limiting discovery"); *Vance By and Through Hammons v.*

*United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) (reversing summary judgment because "*no* discovery was conducted before the motion for summary judgment was filed and decided").

No discovery was conducted in this case because the magistrate judge granted the defendants' motion to stay discovery. However, the plaintiff has presented material, some of which was discussed by the magistrate judge in his report, that convinces this Court that if permitted to conduct discovery the plaintiff could come forth with "pleadings, depositions, answers to interrogatories . . . admissions [and] affidavits" that would "show that there is [a] genuine issue as to [the] material fact[s]" of the case, rendering summary judgment inappropriate on the claims against defendants Parent and Richards for violating his constitutional rights under the First and Fourth Amendments and for false imprisonment and malicious prosecution under state law. *See* Fed. R. Civ. P. 56(c).

II.

The plaintiff was arrested pursuant to an arrest warrant issued by a state court magistrate after considering an affidavit submitted by defendant Richards. That affidavit states:

> 1. This incident occurred on 05-29-04 at approximately 10:26pm. This incident occurred at 1139 W. Lake St. (Freels Market payphone), City of Tawas City, County of Iosco, State of Michigan.
> 2. Bomb Threat: At 10:26pm Central Dispatch received a 911 call stating that there was a place in Tawas City by the name of Cross Roads and that it was going to blow, that it was going to blow tonight. The caller then hung up the phone.
> 3. Dispatcher Soroka works the midnight shift and has taken several phone calls from Wolgast in the past. Cpl. Richards was advised that the caller of the bomb threat sounded as the same as [sic] Wolgast.
> 4. Evidence: Copy of bomb threat, prior calls made by Wolgast and radio/phone traffic between Central Dispatch and Cpl. Richards. It should be noted that Wolgast calls into Central Dispatch numerous times a month concerning loud music at Cross Roads Bar and Grill. Cpl. Richards has listened to the prior calls made by Wolgast and the actual bomb threat. Cpl. Richards believes the caller to be the same on all the calls.

> 5. The suspect is Jeffrey Allen Wolgast, w/m, DOB: 11-14-56. Cpl. Richards spoke to Wolgast at his residence, on 05-29-04. Wolgast stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freels Market. Wolgast stated that he did not make the bomb threat.

Pl.'s Resp. Br. Ex. F, Aff. at 1. The state court magistrate apparently found that the affidavit was sufficient to establish probable cause to arrest the plaintiff, and he issued an arrest warrant. However, the state court "warrant is not an automatic shield from liability but is 'only one factor [used] in applying the test of "reasonable professional judgment" to the officers' conduct.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 701 (6th Cir. 2006) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1107 (6th Cir. 1996). This is especially true when there is information proving that the affiant's statements were false.

In this case, the magistrate judge found that the plaintiff submitted information that suggests not only that several of the statements in the affidavit are false, but also that defendants Richards and Parent knew of the falsehood or included them with reckless disregard for their truth. First, the plaintiff produced a chart showing the calls he made to complain of loud music at the Crossroads amounted to only five calls during the six months preceding the bomb threat. Pl.'s Resp. Br. Ex. E, Chart of Complaint Calls at 9. The chart contradicts the averment that he placed calls "numerous times a month" as the affidavit states. Next, although Richards averred that "Wolgast stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freels Market," the plaintiff has produced a transcript of a recording of an initial interview of him by the police that contradicts this allegation. According to the transcript, the plaintiff never told defendant Richards that he was on a bicycle ride at the time of the bomb threat call, but rather that he had already arrived home and was eating dinner when the call was placed. Dkt # 22, Tr. in Supp. of Pl.'s Ex. A, Transcript of Initial Police Interview at 18-20. Next, Richards states in the affidavit that he

"was advised [by the Dispatchers] that the caller of the bomb threat sounded as the same as [sic] Wolgast." But the plaintiff submitted his affidavit relating a conversation with Dispatcher Sorka, who told "whoever asked" that she "had talked to [the plaintiff] in the past and that whoever called the bomb threat in did not sound like [the plaintiff] at all." Dkt # 22, Tr. in Supp. of Pl.'s Ex. A, Transcript of Conversation Between Plaintiff and Dispatcher Soroka at 39. The other dispatcher, one Golimbieski, stated in a recorded conversation with the plaintiff that she "told Officer Richards that [she] thought that the caller was too young" to have been the plaintiff. Dkt # 22, Tr. in Supp. of Pl.'s Ex. A, Transcript of Conversation Between Plaintiff and Dispatcher Golimbieski at 42.

The case against the plaintiff was dismissed at the preliminary examination because there was no evidence that the voice on the tape recording of the threat call matched the plaintiff's voice. Apparently the tapes were never sent to the proper police laboratory for voice analysis. The information summarized above also tends to show that the two investigating officers focused their attention on the plaintiff and his son for no good reason. Richards stated in a report that he was advised by Golimbieski that the voice on the call sounded "like one of the Wolgasts," which apparently is denied by Golimbieski, suggesting that Richards may have attempted to build a case against any one of the family members. The magistrate judge concluded that the plaintiff made a "strong preliminary showing" that the affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in including in the affidavit false information. *Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005). The Court agrees. Moreover, the Court finds that if the offending provisions of the affidavit are redacted, the remaining allegations do not establish probable cause to arrest, and no reasonable officer could conclude otherwise.

The magistrate judge stayed discovery so that the defendants could argue their qualified immunity defense at this early stage of the proceedings. This Court is satisfied that the magistrate judge properly concluded that "the facts, viewed in the light most favorable to the plaintiff, 'show the officer[s'] conduct violated a constitutional right,'" and "'the right was clearly established.'" *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).

Defendants Parent and Richards objected to the report and recommendation on the grounds that the magistrate judge relied on hearsay in determining that fact issues precluded summary judgment on the surviving claims against them; the magistrate judge improperly relied on the allegations in the complaint to find a contradiction in the affidavit concerning the route plaintiff took that night on his bicycle ride; and the non-hearsay, factual evidence shows that probable cause supports the warrant and the officers' actions. The Court overrules these objections for the reasons stated above.

### III.

The plaintiff objects to the recommendation to dismiss all the claims against police chief Frank and the police department. He says that he has pleaded sufficient facts to show that Frank engaged in wrongdoing himself, and he is accountable under a supervisory liability theory as well for the improper arrest. He also contends that Frank retaliated against him, and Frank is not entitled to absolute or qualified immunity. None of these objections has merit.

To establish a claim under 42 U.S.C. § 1983, the plaintiff must satisfy two elements: (1) that there was a deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under of color of state law. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902

(6th Cir. 2003). The plaintiff's claim against the police department must be construed as a claim against a municipal authority. Municipalities are considered "persons" within the meaning of section 1983; however, a city "cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, municipal liability will be found only when the alleged unconstitutional actor "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Id.* at 690. A municipality also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Berry v. City of Detroit*, 25 F.3d. 1342, 1345 (6th Cir. 1994).

The plaintiff has failed to allege in his complaint that the actions of the individual officers or even the chief were carried out as part of a municipal policy or official custom. The plaintiff has not alleged that the police department engaged in Fourth Amendment violations or First Amendment retaliation as part of its official acts, or that it failed to train its officers, or that a series of similar complaints put the police department on notice of the need to make rules or establish procedures regulating incidents of this type. It appears to the Court that the only basis on which the plaintiff seeks to maintain his claim against the police department is *respondeat superior*, and therefore the magistrate judge properly recommended dismissal of all claims against that entity.

The allegations against the police chief, Dennis Frank, are contained in various paragraphs of the complaint as set forth here:

> 3) The Defendants were motivated in whole or in part by retaliation. First, Wolgast exercised his right to make complaints about the noise problem created by Crossroads . . . . Second, Wolgast exercised his right through the Michigan Freedom of Information Act (hereinafter "FOIA") to obtain a

      police car tape which documented various examples of incompetence and police misconduct committed by [Corporal] Richards. With no legal grounds to do so, Chief Frank denied this tape. Wolgast appealed this decision to the TPA Board, and Frank advised Perry Franzoi, head of TPA Board, to uphold the denial. This decision was reached behind the scenes and without consultation of the rest of the TPA Board—a process which violated the TPA's own written procedure on how to handle a FOIA appeal. Almost 2 weeks later, Frank was informed via telephone that Wolgast was considering suing the TPA over this FOIA issue. That same day, Prosecutor Rapp authorized the arrest warrant for Wolgast's arrest. One week later, Wolgast submitted another FOIA request for the same tape. On that same day, the arrest warrant was issued.

36)    On June 16, 2004 (18 days after the bomb threat incident), Wolgast made a FOIA request for the part of the police in-car VHS tape which documented Corporal Richards's interrogation of the Wolgast family. Chief Frank immediately called Wolgast via telephone and denied this request. Several days later, Wolgast received a written denial stating that "since this case is still under investigation, I am unable to fulfill your request at this time." The simple fact that a case is still under investigation is NOT an exemption protected by the FOIA.

44)    Also by the end of the day (July 16), Corporal Richards had turned the criminal case over to Chief Frank, and at this time, Frank became the investigating officer in charge of the case.

46)    While Wolgast and Brandon were at Hadley's office [an attorney the plaintiff was consulting at the time], Hadley called Chief Frank via telephone and asked him when the criminal case would be closed so that Wolgast could get his VHS tape. Frank informed Hadley that the case would be turned over to the prosecutor Tuesday of the following week (August 3) and at that time Wolgast could submit another FOIA request for the tape.

47)    Prosecutor Rapp signed the Complaint Felony authorizing a warrant for Wolgast's arrest the same day that Hadley called Chief Frank.

55)    On Sunday, August 15, Sergeant Parent went to the Wolgast residence and informed Wolgast that there was a Warrant out for his arrest. Wolgast turned himself in the next morning and was arrested by Chief Frank. Despite the Fact that Frank was the arresting officer, Parent signed the Return Felony.

Compl. at ¶¶ 3, 36, 44, 46, 47, 55.  It also is noteworthy that Frank is the person that actually arrested the plaintiff on the warrant; the plaintiff turned himself in at the police station, and Chief Frank was on duty at the time.

As noted above, the Court liberally construes the allegations in a *pro se* plaintiff's complaint. However, such complaints must plead facts sufficient to show a legal wrong has been committed for which plaintiff may be granted relief.  Fed. R. Civ. P. 12(b); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 755 (E.D. Mich. 2001).  There are no facts stated above from which a reasonable person could conclude that defendant Frank personally participated in constructing a false affidavit, or knew that defendants Parent and Richards had done so and encouraged or condoned such behavior.  At most, the complaint sets forth the plaintiff's dispute over his efforts to obtain tape recordings under the state Freedom of Information Act (FOIA).  But these allegations establish neither the elements of a Fourth Amendment claim nor a First Amendment retaliation claim.

Frank arrested the plaintiff in the police station, but there is no evidence offered that suggests the chief was doing anything but executing a warrant he had no reason to believe was invalid or procured by questionable means.  None of the allegations in the complaint suggests otherwise, and the plaintiff has not offered any information by affidavit or otherwise that indicates that discovery would reveal anything different.

Since there is no basis to conclude that defendant Frank engaged in wrongful conduct, there is no grounds to find that his arrest of the plaintiff amounted to retaliation against the plaintiff for exercising his First Amendment rights to complain about the noisy bar or demand evidence under the state FOIA.  Nor can the Court find that Frank executed or participated in a false arrest or malicious prosecution.

The Court believes that the magistrate judge properly disposed of these claims. The plaintiff's objections to their recommended dismissal, therefore, will be overruled.

IV.

After conducting a *de novo* review of the record in light of the plaintiff's and defendants' objections, the Court is satisfied that the defendants' motion to dismiss or for summary judgment should be granted in part and denied in part. The magistrate judge properly evaluated the record at this stage of the proceedings, and there is sufficient information to convince the Court that the claims against defendants Parent and Richards should go forward and discovery be allowed.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt # 26], is **ADOPTED**.

It is further **ORDERED** that the defendants' objections [dkt # 27] and the plaintiff's objections [dkt #29] to the report and recommendation are **OVERRULED**.

It is further **ORDERED** that the defendants' motion for summary judgment [dkt # 15] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the part of the complaint and all claims against the Tawas Police Authority and Police Chief Dennis Frank, and the claims against defendants Steven Parent and John Richards for conspiracy and intentional infliction of emotional distress are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion to dismiss or for summary judgment as to the claims against defendants Parent and Richards for violating the plaintiff's constitutional rights under the First and Fourth Amendments and for false imprisonment and malicious prosecution under state law is **DENIED**.

It is further **ORDERED** that the matter is referred to the magistrate judge to conduct all additional pretrial matters.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: September 7, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 7, 2006.

s/Tracy A. Jacobs  
TRACY A. JACOBS