UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY A. WOLGAST,

    Plaintiff,

v.

SERGEANT STEVEN PARENT, and
CORPORAL JOHN RICHARDS,

    Defendants.

CASE NO. 05-CV-10278

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**
(Dkt. 66, 87)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. 66) be **DENIED** in its entirety and that Defendants' motion for summary judgment (Dkt. 87) be **GRANTED IN PART** and **DENIED IN PART** as follows: that summary judgment be denied as to Defendant Richards and that summary judgment be granted as to Defendant Parent.

## II. REPORT

### A. Introduction and Procedural History

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on November 14, 2005. (Dkt. 4.) The case was reassigned from U. S. District Judge David Lawson to U. S. District Judge Thomas Ludington on

September 12, 2006. (Dkt. 36.) A previous Report and Recommendation recommending that the Court grant in part and deny in part Defendants' motion for summary judgment was adopted on September 7, 2006. (Dkt. 26, 35.) As a result, Defendants Tawas Police Authority and Dennis Frank were terminated from the case. The following claims remain against Defendants Parent and Richards: (I) First Amendment retaliation; (II) unlawful arrest under 42 U.S.C. § 1983; (III) false imprisonment under 42 U.S.C. § 1983; and (IV) malicious prosecution in violation of Michigan law.

Currently before the Court is Plaintiff's motion for summary judgment and Defendants' motion for summary judgment. (Dkt. 66, 87.) The parties have filed responses opposing the motion (Dkt. 74, 89) and replies. (Dkt. 79, 90, 91.) Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the motions are ready for Report and Recommendation without oral argument.

### B. Factual Background

At 10:27 p.m. on May 29, 2004, central dispatch for the Tawas Police Authority ("TPA") in Tawas, Michigan, received a telephone call from a male who stated that the Crossroads Bar & Grill ("Crossroads") was going to "blow tonight," and then the man hung up the phone. (Pl.'s Mot., Dkt. 66, Ex. B at 4; Defs.' Mot., Dkt. 15, Ex. 1 ¶¶ 2, 9; Ex. 2 at 11.) The exact content of the call, as later transcribed, was as follows:

> There's a place in Tawas City called the Corssroads [sic]. That place is going to f***ing blow tonight. Nobody'll f***ing believe me. It's going to blow tonight.

(Dkt. 66, Ex. F at 8.) The call, which was made from a pay phone near Freel's Market, was interpreted as a bomb threat. (Dkt. 15, Ex. 2, Tawas Police Authority Original Incident Report at 1.) Defendant Corporal John Richards ("Corporal Richards") contacted Officer Mark Ferguson ("Officer Ferguson") and together they proceeded to the area near the market where the pay phone

2

is located. No one was near the phone and the officers were unable to locate anyone who had observed any recent use of the phone. (*Id.*)

Since the officers were aware that Plaintiff Jeffrey Wolgast had made calls to TPA central dispatch complaining about excessive noise from Crossroads in the past, they suspected Plaintiff may have made the bomb threat as well. (*Id.*) The officers' summary report indicates that after the officers did not locate anyone at the payphone, Defendant Officer Richards called the TPA central dispatch and asked them to "pull up prior calls made by the Wolgast's [sic] and see if they sounded the same." (*Id.*) The incident report goes on to say that "Cpl. Richards was then advised, by Dispatcher Golimbiewski, that Dispatcher Soroka stated that it did sound like one of the Wolgast's [sic]." (*Id.*) The report also notes that "Dispatcher's [sic] Golimbiewski and Soroka are the midnight crew at Central Dispatch and has [sic] talked to the Wolgast's [sic] on numerous occasions when they have called in regarding loud Music at Cross Roads." (*Id.*)

The officers proceeded to Plaintiff's residence, where they questioned Plaintiff, his wife, and his son, all of whom denied making the call. The officers indicated to Plaintiff and his family that they would be sending tapes of Plaintiff's previous phone complaints and the tape of the bomb threat to the Michigan State Police crime lab for voice analysis and that, if the voices matched, Plaintiff would be charged with a felony. (Dkt. 66, Ex. B at 15, 17, 18, 22-23.) Although initially considered a suspect, Plaintiff's son, who had also complained about the noise at Crossroads in the past, was eliminated from suspicion by the officers after his mother stated that her son was home at the time the call was made.

More than two months later, on August 4, 2004, a warrant was issued for Plaintiff's arrest. The affidavit in support of the arrest warrant was sworn out by Defendant Sergeant Steven Parent. The affidavit states that Defendant Officer Richards "was advised that the caller of the bomb threat

3

sounded as [sic] the same as Wolgast" and that Defendant "Richards believes the caller to be the same on all the calls." (Dkt. 15, Ex. 2, "Statement in Support of Complaint for Warrant.") The affidavit also avers that "Wolgast stated that he was out on a bicycle ride the time the 911 call came in, and had ridden his bicycle by Freel's Market." (*Id*.) Plaintiff alleges that, contrary to this averment, he specifically told the officers that his bike route did *not* take him past Freel's Market and that he was home eating at the time the call was placed. (Compl. ¶¶ 17-19.)

Plaintiff was arrested on August 16, 2004, for violation of Michigan Compiled Laws 750.411a, false report or threat of bomb, a felony carrying a maximum punishment of four years in prison and a $2,000 fine. (Dkt. 15, Ex. 2.) The charge was dismissed on September 28, 2004, the day on which the preliminary examination was scheduled to take place, because, according to the Complaint, the dispatchers could not identify Plaintiff's voice. (Compl. ¶ 59.)

## C. Cross-motions for Summary Judgment

### 1. Governing Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving

party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## 2. Discussion

The parties concur that the salient question is whether the presumptive facial validity of the affidavit in support of the arrest warrant[1] is undermined by the inclusion of false or recklessly erroneous factual information that is necessary to the finding of probable cause.[2] *See Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). "Reckless disregard for the truth in the submission of a warrant application may be established where an officer 'in fact entertained serious doubts as to the truth of the allegations' or where 'circumstances evinc[ed] obvious reasons to doubt the veracity of the allegations' in the application." *Burke*, 405 F.3d at 81 (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)).

The Sixth Circuit has stated, albeit in an unpublished decision, that in order to show a reckless disregard for the truth, there "'must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth [of the statements].'" *United States v. Cican*, 63 Fed. App'x 832, 835 (6th Cir. 2003) (declining to adopt an objective standard) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968), and citing *Beard, supra*).

However, the "failure to investigate a matter fully, to 'exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence' rarely suggests a knowing or reckless disregard for the truth." *Beard v. City of Northglenn, Colorado,* 24 F.3d 100,

---

[1] Defendants make much ado about the fact that the first Report and Recommendation ("R&R") concluded that the warrant was facially valid. (Def. Resp., Dkt. 74 at 16-17.) Actually, the R&R stated that, "[i]f presumed accurate, the allegations in the affidavit could, arguably, support a finding of probable cause" and concluded that "[a]lthough less than compelling, the affidavit and warrant set forth sufficient facts which, if true, could appear to support a facially valid warrant." (Dkt. 26 at 11.) For purposes of this motion, I will assume, *arguendo*, as did the initial R&R, that the arrest warrant was facially valid.

[2] As noted in the first R&R, the remaining claims all require a showing that probable cause was lacking and thus, all turn on this central question. (Dkt. 26 at 14-20.)

6

116 (10th Cir. 1994) (citing *United States v. Dale*, 991 F.2d 819, 844 (D.C. Cir. 1993); *United States v. Miller*, 753 F.2d 1475, 1478 (9th Cir. 1985); *United States v. Mastroianni*, 749 F.2d 900, 909-10 (1st Cir. 1984); and *United States v. Young Buffalo*, 591 F.2d 506, 510 (9th Cir. 1979)).

In the previous Report and Recommendation, as adopted, I found that Plaintiff had made a "strong preliminary showing" that the affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in his inclusion of false facts or the omission of critical information from the affidavit in support of the search warrant. (Dkt. 26 at 12-13.)

In order for Plaintiff or either of the Defendants to be entitled to summary judgment, he must point to evidence that demonstrates that there is no genuine issue of material fact that a defendant intentionally or recklessly disregarded the truth in the probable-cause-forming statements provided in the affidavit in support of the arrest warrant. *Street, supra*.

3. **Defendant Richards**

When an arrest is conducted pursuant to a warrant, as it was in the instant case, "'a deliberate or reckless misstatement or omission by a governmental official who is not the affiant may nevertheless form the basis of a *Franks* claim.'" *United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002) (quoting *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997) (proceeding against both affiant and non-affiant with respect to alleged misstatements transmitted to affiant by non-affiant) (abrogated on other grounds). *Accord United States v. Calisto*, 838 F.2d 711, 714 (3rd Cir. 1988); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984). "The Fourth Amendment places restrictions on the actions of the government generally, not merely on affiants." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992). "Otherwise, the government would be able to shield itself from *Franks* suppression hearings by deliberately insulating affiants from

7

information material to the determination of probable cause." *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995).

In this case, Defendant Richards gathered the information that was included in the affidavit in support of the arrest warrant. Plaintiff contends that four specific pieces of information in support of the warrant were false or revealed a reckless disregard for the truth. On the other hand, Defendant Richards argues that he did not knowingly make any false statements and that the admissible evidence is uncontested on this point. (Dkt. 87 at 16-19.)

I suggest that the alleged falsities are either not material or that genuine issues of material fact prevent the granting of summary judgment in favor of the Plaintiff or the Defendant. I will address each in turn. Plaintiff first challenges the statement in the affidavit that he was "out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freel's Market." (Dkt. 66 at 2; Dkt. 15, Ex. 2 (affidavit).)

The threatening call had been placed at 10:26 p.m. and the officers questioned Plaintiff and his family at their home at 10:41 p.m. (*Id.* at 20.)[3] Plaintiff offers evidence that he and his wife had traveled to the WalMart in West Branch earlier and had returned home around 9:25 - 9:30 p.m. (Dkt. 74, Ex. H at 8 (son Brandon),[4] 11, 20 (wife).) Plaintiff told Defendant Richards that he had returned from riding his bike approximately twenty-five minutes before the officers arrived (approximately 10:05-10:15 p.m.) and he described the approximately-three-mile route that he took to U.S. 23, "down 23, back up 23, down Bay Drive to the end and back." (Dkt. 74, Ex. H at 19; Dkt. 66, Ex. C at 4 (Defendant Richards' report regarding Plaintiff's statement.)) Plaintiff notes

---

[3]Although the police report states that the Wolgasts were interviewed at 10:31 (Dkt. 66, Ex. C at 3, 4), Defendant now indicates that the 10:31 figure in the police report was a typographical error and that the correct time was 10:41 as evidenced by the transcript of the in-car video. (Dkt. 87 at 4, n. 5.)

[4]Brandon works at Freel's Market and had worked there from 1 p.m. until 9 p.m. that night and had been home cooking dinner since then, including when Plaintiff was riding his bike. (Dkt. 74, Ex. H at 4.)

8

that the threatening call came in at 10:26 p.m., approximately 5-10 minutes after Plaintiff indicated he had arrived home from his bicycle ride. (Dkt. 66 at 2.) Defendant Richards stated that he did not attempt to lift any fingerprints from the payphone from which the call was made because it is a public telephone. (Dkt 87, Ex. 7 at 16.)

Although Plaintiff contends that he indicated a route that did not take him past Freel's Market, Defendant Richards' report stated that "Jeffrey admitted that he was out on a bicycle ride and that he had ridden down US-23 past Freel's Market." (Dkt. 66, Ex. C at 4.) Defendant Richards currently contends that the route taken put Plaintiff "in the vicinity" of Freel's Market and that Plaintiff could have ridden to Freel's Market in approximately a minute and a half. (Dkt. 74 at 7-8, and Ex. G, Dep. Pl. at 20.) Defendant Parent testified that having seen the route, he "wouldn't have worded it like that [i.e., that Plaintiff had ridden by Freel's Market], but [he] can see how someone would think if they were going down the back streets they're only right behind Freel's market and they could have interpreted it that way" but he couldn't say "what [Defendant Richards] was thinking." (Dkt. 87, Ex. 8 at 42.)

Defendant Richards' report also states that Plaintiff indicated he had "returned home from his bicycle ride approximately twenty to twenty five minutes prior to Officers arrival," which would have placed Plaintiff home from the bicycle ride between 10:15 p.m. and 10:20 p.m., i.e., before the threatening call was placed. (Dkt. 66, Ex. C at 2.) However, the statement in support of the warrant states that "Wolgast stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freel's Market." (Dkt. 15, Ex. 2 at 11, ¶ 5.)

I suggest that this conflicting evidence as to whether Plaintiff rode past Freel's Market and the ambiguous evidence regarding the timing of his bike ride are not so one-sided as to allow summary judgment and instead reveal a genuine issue of fact as to whether the affidavit contained

9

either false statements or statements made with a reckless disregard for the truth regarding whether Plaintiff rode past Freel's Market and whether he was riding his bike at the time the threatening call was made.

Next, Plaintiff challenges the statement in the affidavit that he "calls into Central Dispatch numerous times a month concerning loud music at the Cross Roads Bar and Grill." (Dkt. 66 at 3; Dkt. 15, Ex. 2.) Plaintiff contends that this statement is false because phone records show that he made only five calls in the six-month period preceding the bomb threat. (Dkt. 66 at 3, Ex. C at 8.) Defendant Richards does not address this point. I suggest that Plaintiff's evidence is undisputed, but that this is not a material issue because there is no legally significant difference between calling numerous times a month and simply having called numerous times in the past such that employees could potentially recognize Plaintiff's voice. Therefore, I suggest that summary judgment should not be granted in favor of Plaintiff as to this ground.

Thirdly, Plaintiff contends that the statements in the affidavit regarding voice identification are false or were made recklessly. Specifically, Plaintiff challenges the statements that "Cpl. Richards has listened to prior calls made by Wolgast and the actual bomb threat [and] Cpl. Richards believes the caller to be the same on all the calls." (Dkt. 66 at 4; Dkt. 15 at Ex. 2.) Plaintiff notes that a professional voice analysis was sought by Defendant Richards but was never conducted because the tapes were initially sent to the wrong department at the Michigan State Police, then he was informed that the state police no longer provide that service, and then his request to obtain a search warrant for voice exemplars was denied by the prosecuting attorney. (Dkt. 66 at 4-5; Ex. C.) Plaintiff recalls that Defendant Richards told him and his family members that he would not know "for sure" who had made the threatening call until the evidence was sent to the "crime lab" and that if the lab determined Plaintiff had made the call, then a warrant would

issue. (Dkt. 66 at 6; Ex. B.) Plaintiff also relies on the fact that Defendants, in a response to a discovery motion, blurred the distinction between calls made by Plaintiff and his son, Brandon, and that one of the tapes listened to by Defendant was actually made by Plaintiff's son rather than Plaintiff. (Dkt. 66 at 6; Ex. H.) I suggest that any statements made in a response to a discovery request years after the warrant issued are irrelevant to the current question.

Thus, the only relevant question is whether the presence of a call by Plaintiff's son, included in the tapes reviewed by Defendant Richards, is significant in the context of this motion. Plaintiff argues that it reveals that Defendant Richards acted with a reckless disregard for the truth. (Dkt. 66 at 6.) I suggest that, even assuming one of the tapes was Plaintiff's son's voice rather than Plaintiff's, this difference reveals, at most, an issue of fact as to the identity of the voice or a negligent voice identification technique, either of which is insufficient to warrant summary judgment in favor of either party.

Finally, Plaintiff challenges the statements in the affidavit that "Dispatcher Soroka works the midnight shift and has taken several phone calls from Wolgast in the past [and] Cpl. Richards was advised that the caller of the bomb threat sounded as [sic] the same as Wolgast." (Dkt. 66 at 7; Dkt. 15 at Ex. 2.) Plaintiff argues that any identification made by the dispatchers was done in an impermissibly suggestive manner. (Dkt. 66 at 7.) Plaintiff further argues that the dispatchers informed Defendant Richards, prior to his seeking a warrant, that they were of the opinion that Plaintiff was not the caller. (Dkt. 66 at 9.) Plaintiff states that, pursuant to the prosecuting attorney's advice, Defendant Richards played recordings of previous calls made by himself and Plaintiff's son as well as the actual bomb threat call. (Dkt. 66 at 9-10.) The tapes were played for Dawn Soroka on July 13, 2004, and, as Plaintiff states, "the only question before the Court is what Dispatcher Soroka said in response to listening to the recordings." (Dkt. 66 at 10; Dkt. 91 at 5.)

11

In the previous Report and Recommendation regarding Defendants' motion for summary judgment, Plaintiff filed documents representing recorded conversations that Plaintiff had with Dispatchers Soroka and Golimbieski and which arguably supported his argument that the officers had no reason to believe the call was made by Plaintiff.[5] Although the documents were inadmissible hearsay, as Judge Lawson noted, "if permitted to conduct discovery," Plaintiff could produce admissible evidence of the same ilk." (Dkt. 35 at 4, 7.)

Therefore, at the stage when discovery was still open, the statements could be used to avoid summary judgment. Defendants "anticipated that Plaintiff will continue to rely on the unsworn, inadmissible hearsay statements of Soroka and Golimbiewski in an attempt to create a genuine issue of material fact[.]" (Dkt. 87 at 18, n.17.)

Defendants have offered recent deposition testimony that is vastly different from the comments given in the recorded conversations. For instance, Dispatcher Soroka testified in her deposition that she does not recall ever telling anyone at the police department that the voice on the threatening call did not sound like Plaintiff. (Dkt. 74, Ex. F at 15.) In addition, Defendants have offered Dispatcher Golimbieski's deposition testimony where she remembered Dispatcher Soroka saying that the voice on the threatening call sounded like Plaintiff. (Dkt. 74, Ex. E at 13.) Dispatcher Golimbieski also stated that Defendant Richards was told the threatening call sounded like Plaintiff. (Dkt. 74, Ex. E at 24-25.) Finally, Defendants offer Ryun Ridgeway's deposition

---

[5] Documents filed with Plaintiff's response to defendants' original motion for summary judgment indicated that Dispatcher Soroka told Plaintiff that she told "whoever asked [her]," "whether it was a police officer or somebody in [the office]," that "[she] had talked to [Plaintiff] in the past and the person that called that bomb threat in did not sound like [Plaintiff] at all." (Tr. in Supp. of Ex. A, Dkt. 22 at 42.) Soroka indicated that she "was subpoenaed, which was strange, [she] thought, because . . . what good was [she] gonna do them, really, truly? . . . because [she] had talked to [Plaintiff] in the past and [she] said that it just did not sound like Jeff Wolgast and [she] had talked to [Plaintiff] in the past." (*Id*. at 43.) Dispatcher Golimbieski told Plaintiff that she "told Officer Richards that [she] thought the caller was too young and that [Plaintiff] was always cordial, and uh, didn't swear or raise his voice [Plaintiff] would just call in and make a complaint and that was it, you know, and that was [her] opinion, [she] thought the caller was too young." (*Id*. at 41.)

testimony where he recalls Dispatcher Soroka saying something about the call being from Plaintiff or his family. (Dkt. 74, Ex. D at 20.)

Since the recollection of the dispatchers in their sworn deposition testimony is different from their initial statements to Plaintiff, Defendants argues that Plaintiff has not and cannot come forward with any admissible evidence to prevent summary judgment in their favor. (Dkt. 87 at 17-18.)

I suggest that these differences bolster the conclusion that a genuine issue of material fact exists and may provide Plaintiff with grounds for impeachment at trial. *See Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005) ("The foundational prerequisites of Rule 613(b) require only that the witness be given an opportunity, at some point, to explain or deny the prior inconsistent statement and that the opposing party be given the opportunity to examine the statement . . . [however,] when a witness admits to making a prior inconsistent statement, extrinsic proof of the statement is inadmissible.") It is possible to preclude summary judgment with impeachment evidence alone under the appropriate circumstances. "To prevent summary judgment on the basis of witness credibility, plaintiff must provide specific impeachment evidence." *Sowemimo v. Cowan*, No. 01-255-DRH, 2004 WL 3495227, *2 (S.D. Ill. Feb. 17, 2004). *Accord Muhammed v. City of Chicago*, 316 F.3d 680, 683-84 (7th Cir. 2002) ("to have prevented summary judgment, [Plaintiff] needed to provide specific evidence when attacking [witness's] credibility, such as contradictory eyewitness accounts or other impeachment evidence"); *Wilmington Trust Co. v. Manufacturers Life Ins. Co.*, 624 F.2d 707, 709 (5th Cir. 1980) (finding that "prospective impeachment of the movant's evidence" sufficed to preclude summary judgment where plaintiff gave false information on insurance application and witness for insurer claimed it would not have issued the policy but for the false information and plaintiff

13

sought to impeach witness as biased). *But see Santos v. Murdoch*, 243 F.3d 681, 684 (2nd Cir. 2001) (holding that where inadmissible hearsay, specifically an affidavit that was contradicted by more recent deposition testimony, could be used only for impeachment purposes, it could not by itself be used to support claim at the summary judgment stage).

I suggest the instant facts present the case where impeachment evidence is sufficient to survive summary judgement on this ground. Even if it were not, I suggest that Plaintiff has not only the impeachment evidence, but also the statements and future testimony of the Plaintiff himself. Therefore, I suggest that a genuine issue of material fact exists and that summary judgment, for either Plaintiff or Defendant, should be denied on this ground as well.

I further suggest that summary judgment is inappropriate when considering all the material grounds where facts are disputed in the instant case and I suggest that this conclusion is supported by the decision in *Beard, supra.* In *Beard*, one officer erroneously thought that the plaintiff was using an alias and attributed the behavior of another to the plaintiff. In addition, another officer indicated that the plaintiff had been identified as the perpetrator by a witness when, in fact, the witness had "become quite sure" that plaintiff was not the perpetrator and that such information had been communicated to the police officer. Despite these facts, the court found "no serious indication of any improper state of mind on [the officers'] part" where the affidavit reported a "'tentative' identification" and where the witness was "unsure exactly what he told" the officer. *Beard*, 24 F.3d at 117. The court noted that "[c]onfusion may attend what transpired at the identification session, but out of this confusion comes no basis for believing that [the officer's] characterization of [the witness's] comments were either intentionally or recklessly misleading." *Id.* Plaintiff also argued intentional or reckless conduct was present when another officer had failed to note that a person who identified plaintiff in a photographic lineup had a criminal record

and that, if the officers had checked flight records, they would have discovered that plaintiff was out of state when the crime occurred. The court held that "no Fourth Amendment violation accrues simply because an officer failed to delve into the case before him as fully as we, viewing the matter at a comfortable remove, might have hoped." *Id.* Therefore, the court affirmed the grant of summary judgment in favor of the defendant officers.

The instant facts differ from those in *Beard* in that the instant affidavit does not disclose any potential for ambiguity. In *Beard*, although the affidavit did not reflect the fact that the witness had "become quite sure" the identification was not sound, at least the affidavit did disclose that the identification was "tentative." Here, the affidavit does not disclose any potential ambiguity in the timing of the bicycle ride or the route of the bicycle despite the fact that the evidence offered from Plaintiff and his family (which was the only evidence available at the time) directly contradicted the statements in the affidavit. (Dkt. 15 at Ex. 2.) On the other hand, the assumptions stated in the affidavit may be indicative of the type of confusion discussed in *Beard* that falls short of a Fourth Amendment violation, e.g., that the timing or route was miscalculated by the officer. In addition, there are credibility issues surrounding the identification of Plaintiff's voice on the tape of the threatening call. As a result, I suggest that any conclusion regarding the falsity, recklessness or truth of the timing and route of the statements regarding Plaintiff's bicycle ride and voice identification issues should be drawn by a jury who will be able to judge the credibility of the witnesses. *See United States v. Whitley*, 249 F.3d 614, 624 (7th Cir. 2001) (finding false information included intentionally or recklessly where the officers were unable to identify and explain the source of erroneous information, an affidavit identified a source that was later retracted, no effort was made to verify the accuracy of information that did not comport with the officers'

belief concerning the alleged illegal activities, and where a particular officer lacked credibility regarding his participation in the search).

Defendants also argue that they are entitled to qualified and governmental immunity. (Dkt. 87 at 19-20.) For the reasons stated in my initial Report and Recommendation, I suggest that the Defendant Richards is not entitled to qualified or governmental immunity. (Dkt. 26 at 8-14, 19-21.)

### 4. Defendant Parent

Defendant Parent's only role in the instant matter was swearing to the affidavit in support of the arrest warrant. (Dkt. 15 at Ex. 2.) Defendant Parent contends that Plaintiff cannot meet the summary judgment burden with respect to him because, as affiant, he had no duty "to conduct his own investigation" in swearing to the veracity of the affidavit. (Dkt. 74 at 17-18; Dkt. 87 at 15-16.) Defendant states that "'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" (Dkt. 74 at 18; Dkt. 87 at 16 (quoting *Wolf v. Winlock*, 34 Fed. App'x 457, 462 (6th Cir. 2002) (quoting *United States v. Hensley*, 469 U.S. 221, 231, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985).) Defendant further argues that Plaintiff's reliance on a footnote in *Wolf*, which cites *Gardenshire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000), is misplaced because, as the court in *Wolf* noted, *Gardenshire* involved a warrantless arrest. *Wolf*, 34 Fed. App'x at 462, n.4.

After reviewing all these cases, I suggest that neither *Gardenshire* nor *Hensley* are persuasive since they involved warrantless arrests. Furthermore, the *Wolf* court's reliance upon

*Hensley* was also misplaced, since the arrest in *Wolf* was made pursuant to a warrant. Finally, *Wolf* is of limited value since it is an unpublished case. Sixth Circuit Rule 28(g).

"'Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number, as long as the affiant states that he is relying on other officers in the affidavit." *United States v. Anderton*, 136 F.3d 747, 749 (11th Cir. 1998) (citing *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986)). Here, the affidavit begins by stating that "the following [information] is conveyed to him [Sergeant Parent] by Corporal John Richards of the same agency." (Dkt. 15 at Ex. 2.) Plaintiff has not come forward with evidence that Sergeant Parent had reason to "entertain serious doubts" as to the veracity of the statement made by his fellow officer. *Cican, supra*. Therefore, I suggest that Sergeant Parent is entitled to summary judgment. *See also United States v. Kunen*, 323 F. Supp. 2d 390, 400 (E.D.N.Y. 2004) (describing the affiant as an "unwitting conduit").

### 5. Conclusion

For all the reasons stated above, I recommend that summary judgment in favor of Plaintiff and Defendant Richards be denied and that summary judgment in favor of Defendant Parent be granted.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties

are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                               s/ *Charles E Binder*
                               CHARLES E. BINDER
Dated: October 24, 2007                United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on D. Randall Gilmer and on G. Gus Morris, and on Jeffrey A. Wolgast by first class mail, and served on U.S. District Judge Ludington in the traditional manner.

Date: October 24, 2007        By     s/Patricia T. Morris
                                           Law Clerk to Magistrate Judge Binder