UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY A. WOLGAST,

                Plaintiff,                Case Number 05-10278-BC

v.                                               Honorable Thomas L. Ludington

SERGEANT STEVEN PARENT,
and CORPORAL JOHN RICHARDS,

                Defendants.
_____/

**ORDER ADOPTING IN PART AND REJECTING IN PART THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT
RICHARDS' OBJECTIONS, OVERRULING PLAINTIFF'S OBJECTIONS,
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jeffrey Wolgast's ("Plaintiff") and Defendant John Richards' ("Defendant Richards") objections to Magistrate Judge Charles Binder's report and recommendation are presently before the Court. Plaintiff alleges federal and state causes of action against Defendant Richards and Defendant Steven Parent ("Defendant Parent"), police officers, for violation of his First and Fourth Amendment rights, false imprisonment, and malicious prosecution stemming from his arrest related to a phony bomb threat.

Plaintiff and Defendants filed cross motions for summary judgment. Judge Binder recommended granting Defendants' motion with respect to Defendant Parent and denying it with respect to Defendant Richards' motions. The magistrate judge also recommended denying Plaintiff's motion for summary judgment. Plaintiff and Defendant Richards filed objections.

Plaintiff contends that Judge Binder incorrectly recommended granting Defendant Parent's motion with respect to his Fourth Amendment, false imprisonment, and malicious prosecution

claims. Plaintiff contends a triable issue of fact exists that Defendant Parent entertained serious doubts to the veracity of the statements contained within the affidavit in support of the search warrant.

Defendant Richards asserts Judge Binder erred in concluding that triable issues of fact exist based on the assertion that the affidavit contained false statements. Defendant Richards also contends that inadmissable hearsay statements may not be used to demonstrate a triable issue of fact. Additionally, Defendant Richards contends that he is entitled to qualified immunity and governmental tort immunity.

For the reasons stated below, the Court will **ADOPT** in part and **REJECT** in part the recommendation, will **GRANT** Defendants' motion for summary judgment with respect to Defendant Parent, will **DENY** it with respect to Defendant Richards, and will **DENY** Plaintiff's motion for summary judgment.

I

The parties generally agree to the underlying facts in the instant case. At 10:27 p.m. on May 29, 2004, central dispatch for the Tawas Police Authority ("TPA") in Tawas, Michigan, received a telephone call from a male who stated that the Crossroads Bar & Grill ("Crossroads") was going to "blow tonight," and then the man hung up the phone. Dkt. 66-B at 4. The exact content of the call, as later transcribed, was as follows:

> There's a place in Tawas City called the Corssroads [sic]. That place is going to f***ing blow tonight. Nobody'll f***ing believe me. It's going to blow tonight.

Dkt. 66-F at 8. The call, which was made from a pay phone near Freel's Market ("Freel's"), was interpreted as a bomb threat. Dkt. 15-2 at 1. Plaintiff's son was employed by Freel's and he worked at that location the night in question, with his shift ending at approximately 9:00 p.m. Defendant

Richards contacted Officer Mark Ferguson ("Officer Ferguson") and together they proceeded to the area near the market where the pay phone is located. No one was near the phone and the officers were unable to locate anyone who had observed any recent use of the phone. *Id*.

Since the officers were aware that Plaintiff Jeffrey Wolgast had made calls to TPA central dispatch complaining about excessive noise from Crossroads in the past, they suspected Plaintiff may have made the bomb threat as well. *Id.* The officers' summary report indicates that after the officers did not locate anyone at the payphone, Defendant Richards called the TPA central dispatch and asked them to "pull up prior calls made by the Wolgast's [sic] and see if they sounded the same." *Id.* The incident report goes on to say that "[Defendant] Richards was then advised, by Dispatcher Golimbiewski, that Dispatcher Soroka stated that it did sound like one of the Wolgast's [sic]." *Id.* The report also notes that "Dispatcher's [sic] Golimbiewski and Soroka are the midnight crew at Central Dispatch and has [sic] talked to the Wolgast's [sic] on numerous occasions when they have called in regarding loud Music at Cross Roads." *Id.*

The officers proceeded to Plaintiff's residence, where they questioned Plaintiff, his wife, and his son, all of whom denied making the call. The officers indicated to Plaintiff and his family that they would be sending tapes of Plaintiff's previous phone complaints and the tape of the bomb threat to the Michigan State Police crime lab for voice analysis and that, if the voices matched, Plaintiff would be charged with a felony. Dkt. 66-B at 15, 17, 18, 22-23. Although initially considered a suspect, Plaintiff's son, who had also complained about the noise at Crossroads in the past, was eliminated from suspicion by the officers after his mother stated that her son was home at the time the call was made.

Defendant Richards prepared an incident report that detailed his findings. The report

documented his conversations with Plaintiff, his wife, and his son. In pertinent part, the report stated:

> [Defendant] Richards spoke to [Plaintiff] after speaking to [Plaintiff's wife] and [son]. [Plaintiff] admitted that he was out on a bicycle ride and that he had ridden down US-23 past Freel's Market. [Plaintiff] stated that he returned home from his bicycle ride approximately twenty to twenty five minutes prior to Officers [sic] arrival. *It should be noted that the call came in at 10:26 p.m. and Officers arrived at [Plaintiff's] residence at [10:41 p.m.].[1]* [Plaintiff] claimed that he did not call 911 from the pay phone and that if it was him, he would just [sic] called from his own residence. [Defendant] Richards advised that the caller was on tape and that it would be sent to the lab to be compared to [Plaintiff's] prior complaints about Cross Roads. [Defendant] Richards then asked [Plaintiff] what the outcome of the tapes would be and Jeffrey state that it would come back as not being his voice.

Dkt. # 66-C (emphasis in original). Sometime after Defendant Richards instigated the investigation, he left the department for a position with the Michigan State Police. As a result, Defendant Parent continued the investigation.

More than two months later, on August 4, 2004, a warrant was issued for Plaintiff's arrest. The affidavit in support of the arrest warrant was signed and submitted by Defendant Parent. Defendant Richards, however, drafted both the police report and the affidavit signed by Defendant Parent. See Dkt. # 87-4 at 6; Parent Deposition at 19-20. The affidavit states:

> 1. This incident occurred on 05-29-04 at approximately 10:26 p.m. This incident occurred at 1139 W. Lake St. (Freel's Market payphone), City of Tawas City, County
> of Iosco, State of Michigan.
>
> 2. Bomb Threat: At 10:26 p.m. Central Dispatch received a 911 call stating that there was a place in Tawas City by the name of Cross Roads and that it was going to blow, that it was going to blow tonight. The caller then hung up the phone.
>
> 3. Dispatcher Soroka works the midnight shift and has taken several phone calls from Wolgast in the past. Cpl. Richards was advised that the caller of the bomb threat

---

[1] The report states that the officers arrived at 10:31 p.m., but subsequent testimony indicates 10:31 was a typographical error.

sounded as [sic] the same as Wolgast.

4. Evidence: Copy of bomb threat, prior calls made by Wolgast and radio/phone traffic between Central Dispatch and Cpl. Richards. It should be noted that Wolgast calls into Central Dispatch numerous times a month concerning loud music at Cross Roads Bar and Grill. Cpl. Richards has listened to the prior calls made by Wolgast and the actual bomb threat. Cpl. Richards believes the caller to be the same on all the calls.

5. The suspect is Jeffrey Allen Wolgast, w/m, DOB: 11-14-56. Cpl. Richards spoke to Wolgast at his residence, on 05-29-04. Wolgast stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freels Market. Wolgast stated that he did not make the bomb threat.

Dkt. # 89.

Police arrested Plaintiff on August 16, 2004, for violation of Michigan Compiled Laws 750.411a, false report or threat of bomb, a felony carrying a maximum punishment of four years in prison and a $2,000 fine. Dkt. # 15, Ex. 2. The county dismissed the charge on September 28, 2004, the day on which the preliminary examination was scheduled to take place, because, according to the Complaint, the dispatchers could not identify Plaintiff's voice. Compl. ¶ 59.

In the context of this litigation, this is Defendants' second motion for summary judgment. On February 14, 2006, Defendants, along with dismissed Defendants Tawas Police Authority and Police Chief Dennis Frank, filed a motion for summary judgment prior to discovery. Dkt. # 15. The Honorable David Lawson referred that motion for summary judgment to Judge Binder. Judge Binder recommended dismissing Tawas Police Authority and Police Chief Dennis Frank, which Judge Lawson adopted. Additionally, Judge Binder recommended that the Court deny Defendant Parent and Defendant Richards' motion for summary judgment with respect to the 42 U.S.C. § 1983, false imprisonment, and malicious prosecution claims. Judge Binder found triable issues of fact existed with respect to those claims that warranted discovery. The Court adopted Judge Binder's

recommendations, including his recommendation to reject Defendants' argument that each is entitled to qualified immunity.

Plaintiff filed a motion for summary judgment on April 24, 2007, and Defendants filed a renewed motion for summary judgment on August 30, 2007. Dkt. # 66, 87. This Court referred the motions to Judge Binder, who issued a report and recommendation on October 24, 2007. Plaintiff and Defendant Richards filed timely objections.

II

As Judge Binder pointed out in his first report and recommendation, each of Plaintiff's remaining claims require that he demonstrate that the warrant lacked probable cause. *See* Dkt. # 26 at 14-20; Dkt. # 92 at 6 fn 2. Judge Binder further indicated that "[t]he parties concur that the salient question is whether the presumptive facial validity of the affidavit in support of the arrest warrant is undermined by the inclusion of false or recklessly erroneous factual information that is necessary to the finding of probable cause." Dkt. # 92 at 6 (citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). The party contending the affidavit contains false statements has a "heavy burden" and must demonstrate that "specific false statements . . . were made intentionally or with reckless disregard for the truth." *United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002). If that burden is met, then the inquiry is "whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Id.* The Sixth Circuit defined "reckless disregard for truth" as a statement in which the affiant "entertained serious doubts as to the truth.'" *United States v. Cican*, 63 Fed. Appx. 832, 835 (6th Cir. 2003) (unpublished) (*quoting St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (defining "reckless disregard for truth" in the context of First Amendment libel)).

Though Defendant Parent submitted the affidavit with the warrant application, the statements in Defendant Richards' report served as a basis for the showing of probable cause. Defendant Richards did not object to the magistrate judge's legal conclusion that Defendant Richards may be found liable for the alleged false statements contained in Defendant Parent's affidavit based on Defendant Richards' report. Thus, Defendant Richards and Defendant Parent may be liable for alleged misstatements contained in the affidavit. As such, each must be evaluated under the applicable standard.

A

First, with respect to Defendant Richards' objections, Judge Binder concluded that triable issues of fact exist concerning whether Defendant Richards' inaccurate statements included in affidavit were made with reckless disregard for the truth. Defendant Richards contends that applying the Sixth Circuit standard, Plaintiff has not established a factual dispute that Defendant Richards made statements that were false or with reckless disregard for the truth. Defendant Richards contends that a "search warrant affidavit . . . [is] not required to be 100% accurate in all respects." *United States v. Jabero*, 368 F.Supp. 2d 702, 717 (E.D. Mich. 2005). As discussed below, the Court agrees Plaintiff has established that a factual dispute exists that the statements contained in the affidavit were made with reckless disregard for the truth by Defendant Richards.

The report and recommendation focused on four alleged misstatements and found that a factual dispute existed as to whether the misstatements included in the affidavit were false. First, the affidavit stated that "[Plaintiff] stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freel's Market." Plaintiff denies that he drove by Freel's, and Defendant Richards acknowledged that Plaintiff did not state that he rode directly past Freel's.

Defendant Richards contends that it is not a material misstatement because the inference is that Plaintiff's route took him into the vicinity of Freel's. Though Defendant Richards offers a reasonable explanation, the fact that he attributes that statement to Plaintiff raises a triable issue of fact.

Additionally, the report indicated that Plaintiff stated that he returned home 20-25 minutes before the police arrived. Considering that the police arrived at 10:41 p.m. and the bomb threat was made at 10:26 p.m., the statement contained in paragraph five of the affidavit, that Plaintiff was riding his bike at the time of the bomb threat, is inaccurate. Defendant Richards contends that his subjective belief that these statements were truthful indicates that he did not act with reckless disregard for the truth. Dkt. # 94 at 5. This ignores the fact that the affidavit directly attributed the statements to Plaintiff.

Next, Judge Binder concluded that the statement that Plaintiff called dispatch numerous times a month, when in fact it appears that he called about once a month, is immaterial. Though the dispute is unaddressed by Defendant, the Court agrees with Judge Binder's conclusion, that the difference between numerous times a month and once a month, is an immaterial distinction.

Third, Judge Binder found that the inclusion of Defendant Richard's personal opinion that the voice on the bomb threat was the same as Plaintiff's voice established a factual dispute, because Defendant Richards compared the tape with recordings of both Plaintiff and Plaintiff's son. The Court disagrees with the magistrate judge's conclusion. Assuming that Defendant Richards listened to voice exemplars from Plaintiff and Plaintiff's son, there is no indication that his opinion was intentionally or knowingly inaccurate. Furthermore, Plaintiff has not demonstrated any evidence that the inclusion of Defendant Richards' statement, that he believed the voice on the 911 call to be that of Plaintiff, was made with reckless disregard of the truth. As the magistrate judge noted, the

possibility that Defendant Richards listened to tapes of Plaintiff and Plaintiff's son "reveals, at most . . . a negligent voice identification technique." Dkt. # 92 at 11. Thus, Plaintiff has not met his burden establishing a factual dispute with respect to this statement and the Court rejects the magistrate judge's recommendation.

Finally, Judge Binder found the statement concerning the dispatcher's voice identification of Plaintiff creates a triable issue, because impeachment evidence exists that indicates the dispatcher believed that Plaintiff was not the caller. The affidavit stated that "Dispatcher Soroka works the midnight shift and has taken several phone calls from Wolgast in the past. Cpl. Richards was advised that the caller of the bomb threat sounded as [sic] the same as Wolgast". Prior to the dispatcher's deposition, Plaintiff recorded the dispatcher stating that she did not believe that Plaintiff was the caller at the time of the bomb threat. The dispatcher's deposition contradicted this assertion. The magistrate judge's report discussed whether the recorded statement, as impeachment evidence, is legally sufficient to create a triable issue of fact.

Defendant Richards contends that this possible impeachment evidence is not sufficient to survive summary judgment. Plaintiff has not indicated any admissible evidence indicating that Defendant Richards inclusion of the statement that Dispatcher Soroka stated that the voice on the 911 call sounded like Plaintiff was done with reckless disregard for the truth. Nor has Plaintiff demonstrated with admissible evidence that the statement itself is not true. Thus, the Court disagrees with the magistrate judge on this point.

Finally, Defendant Richards objected to the report and recommendation contending the magistrate judge erred in finding that the alleged misstatements discussed above establish a triable issue of fact. Though Plaintiff has a "heavy burden" in establishing that the statements were made

with reckless disregard for the truth, the clear discrepancies between the affidavit and other admissible evidence establish triable issues of fact. Though the Court disagrees with the magistrate judge's conclusions with the respect to some statements included in the affidavit, the Court does agree with Judge Binder's ultimate conclusion that the affidavit's statements regarding the timing and route of Plaintiff's bike ride reveal a genuine issue of fact that the statements in the affidavit were made with reckless disregard for the truth.

In light of the Court's conclusions, the Court must view the affidavit to see if the warrant still establishes probable cause without the alleged untruthful statements. As the Court previously found after Defendant Richards' first motion for summary judgment, if the offending provisions of the affidavit are redacted, the remaining allegations do not establish probable cause to arrest, and no reasonable officer could conclude otherwise. *See* Dkt. # 35. Thus, Defendant Richards is not entitled to summary judgment with respect to each of Plaintiff's claims on this ground.

B

Next, Judge Binder recommended that this Court grant Defendant Parent's motion for summary judgment with respect to all remaining counts. Plaintiff does not object to the dismissal of his First Amendment Retaliation claim (Count I) or the recommendation to deny Plaintiff's motion for summary judgment. Plaintiff does object to the magistrate judge's recommendation to grant summary judgment in favor of Defendant Parent with respect to the Fourth Amendment claim (Count II), the false imprisonment claim (Count III), and the malicious prosecution claim (Count IV), Mich. Comp. Laws § 600.2907.

Judge Binder reasoned that Defendant Parent is not accountable for any inaccurate statements contained in the warrant because Defendant Parent, as the affiant, was not under a duty

to investigate the veracity of the report. Dkt. # 92 at 17. Judge Binder relied on the following notion in his report: "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number, as long as the affiant states that he is relying on other officers in the affidavit." *Id.* (quoting *United States v. Anderton,* 136 F.3d 747, 749 (11th Cir. 1998) (citing *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986))). He concluded that Plaintiff had not raised a triable issue of fact that Defendant Parent acted with reckless disregard for the truth because he did not "entertain serious doubts" as to the veracity of the statement made by Defendant Richard in the report. *See United States v. Cican*, 63 Fed. Appx. 832, 835 (6th Cir. 2003) (unpublished).

Plaintiff contends that the differences between the statements contained in the police report and the affidavit demonstrate that Defendant Parent "entertained serious doubts" as to the veracity of the statements. Plaintiff's argument, however, ignores the fact that Defendant Richards drafted both the police report and the affidavit and that Defendant Parent merely signed the affidavit. See Dkt. # 87-4 at 6; Parent Deposition at 19-20. Though Defendant Parent acknowledged in his deposition that the two statements contained in Defendant Richards' police report are altered in the affidavit, Plaintiff has not demonstrated that Defendant Parent's belief regarding the veracity of Defendant Richards' statements contained in the affidavit was anything more than "mere 'negligence or an innocent mistake . . .'" *Cican*, 63 Fed. Appx. at 835 (*quoting Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Ultimately, the Court concludes that Plaintiff has not demonstrated that Defendant Parent's reliance on the erroneous statements contained in the affidavit drafted by Defendant Richards was "intentional[] or with reckless disregard for the truth." *See United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002). As a result, Defendant Richards can not be found

liable for the alleged mistakes of another officer's investigation. Thus, the Court will adopt Judge Binder's recommendation to grant Defendant's motion for summary judgment with respect to Defendant Parent.

C

Finally, Defendant Richards contends that he is entitled to qualified immunity and governmental immunity. Judge Binder addressed and rejected these arguments in his first report and recommendation concerning Defendants' first motion for summary judgment, which this Court adopted. *See* Dkt. # 26 at 7-13. In the instant report and recommendation, Judge Binder's report indicates that his analysis concerning the immunity issue remains unchanged. Dkt. # 92 at 16. Defendant Richards contends that Judge Binder's failure to substantively reevaluate his qualified immunity argument, in light of the developed record, was an error. *See* Dkt. # 94 at 17-19.

First, Defendant Richards contends that he is entitled to qualified immunity with respect to Plaintiff's 42 U.S.C. § 1983 claim. In the magistrate judge's first report and recommendation, Defendant Richards' qualified immunity claim was evaluated under the following standard: (1) whether a constitutional violation occurred, and if so (2) whether that constitutional right was clearly established. *See* Dkt. # 26 at 8 (*citing Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001))). Moreover, the magistrate judge noted that courts employing the analysis view the evidence in the light most favorable to the injured party, *Id.*, but only consider the facts known to the officers at the time the affidavit was executed. *Id.* (*citing Hale v. Kart*, 396 F.3d 721, 725, 728 (6th Cir. 2005).

Viewing Defendant Richards' qualified immunity claim under the *Saucier* analysis, the Court concludes that he is not entitled to summary judgment. As discussed *supra*, the Court concluded

-12-

that there is a factual dispute with respect to the route and timing of Plaintiff's bicycle ride. Without this statement, the warrant lacked probable cause and Plaintiff may have been arrested in violation of the Fourth Amendment. Thus, a constitutional violation allegedly occurred.

Second, the Court concludes that the right was clearly established. The clearly established right must be particularized such that a "reasonable official in the defendant's position knows that her actions violate that right." *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 505 (6th Cir. 2005). In addition, in the context of a dispositive motion, the next determination is "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(en banc). A court views the facts in the light most favorable to a plaintiff but must only consider the facts known to the officers at the time the affidavit was executed. *Hale v. Kart*, 396 F.3d 721, 725, 728 (6th Cir. 2005).

In this case, Defendant Richards included a statement in the affidavit that was not only factually inaccurate, but that he attributed directly to Plaintiff. Defendant Richards contends that the statement itself is merely inaccurate, not false. This is a reasonable position, in as much as it is undisputed that Plaintiff was in the vicinity of Freel's at a time near when the phone call was made. The affidavit, however, attributed the statement to Plaintiff and unequivocally placed him at the scene when the call was made. At the time the Defendant Richards drafted the affidavit, he had taken Plaintiff's statement. As such, attributing the statement to Plaintiff was objectively unreasonable and Defendant Richards is not entitled to qualified immunity.

Additionally, Defendant Richards contends that he is immune from Plaintiff's state causes

of action, false imprisonment, under Mich. Comp. Laws § 691.1407(2)(a-c), which provides a governmental employee is immune from tort liability when (1) acting in the scope of his or her employment while engaged in the exercise of a governmental function,[2] (2) the conduct is not gross negligence and (3) is the proximate cause of the injury. Gross negligence is defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence. Rather, a plaintiff must adduce proof of conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Maiden v. Rozwood*, 597 N.W.2d 817 , 824 (Mich. 1999) (citation and internal quotation omitted).

Defendant Richards contends that his actions do not amount to gross negligence. Though Plaintiff's response does not materially address this objection, the Court agrees with the magistrate judge's earlier conclusion that Defendant Richards is not entitled to governmental tort immunity. The record demonstrates that Defendant Richards attributed factually inaccurate statements to Plaintiff in the affidavit. This gives rise to the inference that Defendant Richards acted with gross negligence when creating the affidavit, possibly even intentionally misquoting Plaintiff. Thus, a factual dispute exists such that Defendant Richards actions may have been grossly negligent and he is not entitled to immunity from Plaintiff's tort claims. The Court agrees with Judge Binder's conclusion that Defendant Richards is not entitled to qualified or governmental immunity.

III

Accordingly, it is **ORDERED** the magistrate judge's recommendation is [Dkt. # 92] is **ADOPTED** in part and **REJECTED** in part, Defendant Richards' objection [Dkt. # 94] is

---

[2] It is undisputed that Defendant Richards, a police officer investigating an alleged crime, was acting in the scope of his duty while in the exercise of a government function.

**SUSTAINED** in part and **OVERRULED** in part, and Plaintiff's objection [Dkt. # 95] is **OVERRULED**.

It is further **ORDERED** that Defendants Steven Parent and John Richard's renewed motion for summary judgment [Dkt. # 87] is **GRANTED** in part and **DENIED** in part. Defendant Steven Parent is **DISMISSED** in the entirety.

It is further ordered that Plaintiff Jeffrey Wolgast's motion for summary judgment [Dkt. # 66] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 11, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 11, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS